**MAERSK INC. d/b/a Maersk Line, Plaintiff,**

v.

**ATCOM INDUSTRIES, Atcom International Inc., Hercules Fibres Inc., Cyrus Amani, Sara Amani, and Sanjeev Seksaria, Defendants.**

**Maersk Inc. d/b/a Maersk Line, Plaintiff,**

v.

**Atcom Industries, Fibro Americas, Inc., Hercules Fibres Inc., Cyrus Amani, Sara Amani, and Sanjeev Seksaria, Defendants.**

**No. 95 Civ. 3440(JFK).**

United States District Court, S.D. New York.

Sept. 8, 1999.

Holland & Knight LLP, New York City (Alexander F. Vitale, of counsel), for plaintiff.

Gerald Dandaneau, Melville, NY, for defendants.

---

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

KEENAN, District Judge.

These are related actions concerning disputes over unpaid charges for shipping of goods. Jurisdiction is premised upon the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 and Fed.R.Civ.P. 9(h). A one day non-jury trial took place on May 10, 1999. Plaintiff claims $30,196.43 in damages under case 95 Civ. 3440, and $47,056.00 in damages under case 97 Civ. 2916. The following are the Court's Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

*The Parties*

Plaintiff Maersk Inc. d/b/a Maersk Line ("Maersk"), a common carrier of goods by ocean transport, is a New York corporation whose principal place of business is Madison, New Jersey. Defendant Atcom Industries ("Industries") is a now-defunct New York corporation that was in the business of buying and selling waste paper. Industries' office was located at 1010 Northern Boulevard, Suite 208, in Great Neck, New York.

Industries was a going concern throughout most of 1994, but it ceased doing business in December 1994. At the start of 1994, Industries' principal was Rumy Mardi. Mardi ended his affiliation with Industries in the fall of 1994. After that, Anna Reynolds ran the day-to-day operations of Industries. Although it is unclear whether she was a director, officer, or shareholder of Industries, she referred to herself as a Vice-President and ran the company after Mardi departed. Defendant Cyrus Amani, a close friend of Mardi, was a consultant to Industries. For a period of time after Mardi departed, Cyrus Amani held Industries' checkbook. There is no evidence that Cyrus Amani was an officer, director, or shareholder of Industries.

Defendant Sanjeev Seksaria became an employee of Industries in June 1993. In 1992, Seksaria was an agent for Industries in India. While Seksaria was working in this capacity, Mardi persuaded Seksaria to come work for Industries in America. Seksaria was brought over to fix certain problems Industries was experiencing with its shipping of waste paper. When Industries fell upon hard times in 1994 and Mardi was leaving the company, Seksaria persuaded Mardi to let Seksaria try to revive the company. Mardi agreed, and Seksaria assumed responsibility for the buying and selling of waste paper for Industries. Seksaria had authority to negotiate prices for Industries, and to enter into contracts on Industries' behalf. Seksaria left Industries in Fall 1994 because

Industries had no profits and could not continue in business. Seksaria was never a director, officer, or shareholder of Industries.

In the summer of 1994, Defendant Sarah Amani, fresh from her first year in college, worked at Industries as a summer intern. She obtained this position through her father's friendship with Mardi. Sarah Amani was a marketing intern for Industries, and she reported directly to Anna Reynolds. During that summer, Sarah Amani was sent on a business trip to Spain for two weeks. She was sent to Spain to establish business contacts there for Industries, and she made contacts with many potential clients for Industries on this trip. She returned to college in the fall, but worked at Industries one or two days a week. Sarah Amani stopped working at Industries in November 1994.

After the collapse of Industries, Sarah Amani approached Seksaria about the possibility of him working for her in a company that she was forming. Seksaria expressed interest in working for Sarah Amani, and as a result, Sarah Amani formed Defendant Atcom International, Ltd. ("International"). International's business was identical to Industries' business, and its office was located at the same address as Industries, but in a different space in Suite 208.[1] Sarah Amani launched this venture because she was encouraged by the connections that she made in Spain during her internship. She choose the name "Atcom International" to capitalize on the recognition that Industries had attained. She was the sole officer, director, and shareholder of International. Her only employee was Seksaria.

Sarah Amani paid all of the bills for International, and she was responsible for the running of the company. Her father served as a consultant to International, but played no active role in the company.

Sarah Amani also created Defendants Hercules Fibres, Inc. ("Hercules") and Fibro Americas, Inc. ("Fibro") to serve as marketing arms for International. She formed these companies because overseas buyers allegedly had a reluctance to purchase large quantities from only one seller. Hercules and Fibro allowed International to sell a larger quantity of waste paper. Once again, Sarah Amani was the sole officer, director, and shareholder of Hercules and Fibro. Hercules and Fibro had no employees except for Sarah Amani and Seksaria, and although Hercules had its own checks, it was common for Sarah Amani to pay for the bills of Hercules and Fibro out of International's checkbook.

## The Events Leading to the Instant Action

Between October and December 1994, Industries contracted with Maersk for the shipments of several cargoes of waste paper from the eastern coast of the United States to various ports in Europe, India, and Hong Kong. The ocean freight charges for these shipments were $24,596.43. Maersk issued to Industries six bills of lading for these shipments, but Industries never paid Maersk for these shipments. On December 11, 1994 and January 5, 1995, International contracted with Maersk to ship two cargoes of waste paper. The ocean freight charges for these shipments were $5600, but International never paid Maersk for these shipments. The failure to pay resulted in Maersk instituting the action in 95 Civ. 3440.[2]

---

1. Suite 208 in the office building at 1010 Northern Boulevard was a large room that had a common receptionist, and many offices cordoned off into cubicles. There were approximately fifty cubicles that comprised Suite 208. In each cubicle there was furniture that was rented from a common landlord. Therefore, although Industries and International had Suite 208 as its address, they occupied different offices in Suite 208.

2. Although the parties stipulated that Industries was responsible for all eight bills of lading, an examination of the bills of lading reveals that International is the shipper on two of the bills of lading connected to 95 Civ. 3440. On the seventh bill of lading, the shipper is listed as "Atcom International Inc." On the eighth bill of lading, the shipper is only identified as "Atcom," but International was the only extant company on the date of the invoice, January 6, 1995. *See* Amended Complaint, Exh. A, at 8–9 (received in evidence).

**390**

In June 1996, International contracted with Maersk to ship a cargo of waste paper to Hong Kong. At International's request Maersk had issued its bill of lading for these shipments marked "freight prepaid" although International had not paid for the shipment. The ocean freight charges for this shipment totaled $7056.

When the goods arrived in Hong Kong, Maersk asserted a lien on the cargo because of the outstanding invoices that comprise the action in 95 Civ. 3440. The goods were therefore not released to International's customer. International tried to get the goods released by substituting Fibro as the shipper on the bill of lading, but Maersk still refused to release the goods. While International attempted to resolve this dispute, Maersk incurred at the Port of Hong Kong costs for storage, demurrage, and other expenses. Ultimately, Maersk sold the cargo in satisfaction of its lien, and applied the proceeds of the sale to the costs. The proceeds from the sale were not sufficient to pay the charges, and a balance of $40,000 remained of unpaid costs and expenses.

Robert Mark, Maersk's General Manager of Credit & Collections, was responsible for placing the lien on International's cargo. Mark exercised this lien because he concluded that despite the different names, Industries and International were the same company. In making this determination, Mark ordered Dun & Bradstreet reports on Industries, and International. He noted the similarity in names between Industries and International, that both companies had the same address, and that he dealt with Seksaria in both instances. When Sarah Amani attempted to have the goods released by substituting Fibro as the shipper on the bill of lading, Mark again refused to release the goods because of the similarities between Industries and Fibro.

International filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code on October 28, 1996. These proceedings are still pending in the Eastern District of New York. In 1997,

Maersk brought suit seeking reimbursement for the unpaid ocean freight charges and the balance of the costs incurred in connection with storing the cargo at the port of Hong Kong.

All of the bills of lading issued by Maersk in connection with the instant actions contain the following clause. Paragraph 14(4) of the document entitled "Combined Transport Bill of Lading" (attached as Exh. A to the Amended complaint in 95 Civ. 3440, and received into evidence) states:

> The Shipper, consignee, holder thereof, and owner of the goods, and their principals, shall be jointly and severally liable to Carrier for the payment of all freight, demurrage, General average and other charges due hereunder, without discount, together with any Court costs, expenses, and reasonable attorney fees incurred in collecting any sums due Carrier. Payment of ocean freight and charges to a freight forwarder, broker or anyone other than Maersk Line or its authorized agent, shall not be deemed payment to the carrier and shall be made at payor's sole risk. Merchant to remain liable for all charges hereunder notwithstanding any extension of credit to the freight forwarder or broker by Carrier.

The font used in the printing of this clause is very small. Capital letters measure 1/16th of an inch, and the lower case letters are half that size.

### CONCLUSIONS OF LAW

*95 Civ. 3440*

The Court makes the following conclusions of law regarding the Complaint in 95 Civ. 3440. Plaintiff has established that Industries was the contracting party for six of the eight bills of lading at issue. Maersk asserts that, under § 14(4) of the bills of lading, Industries and its principals are liable to Maersk for the unpaid freight charges. The Court agrees with Plaintiff on the § 14(4) argument. This identical

clause has been upheld as valid by courts in the Southern District of New York. *See Maersk, Inc. v. American Midwest Commodities Export Cos., Inc., et al.,* 1998 WL 473945, at *4 (S.D.N.Y. Aug.10, 1998); *Maersk, Inc. v. Alan Marketing, Inc., et al.,* 1998 WL 167323, at *2 (S.D.N.Y. Apr.10, 1998). Therefore, it is clear that Maersk can recover $24,596.43 from Industries and its principals.

The Court concludes that based on the evidence adduced at trial Defendants Seksaria, Cyrus Amani, and Sarah Amani were not principals of Industries. Seksaria at one point had responsibility for buying and selling for Industries, but he was not an officer, director or shareholder of Industries. Even at the peak of Seksaria's power, he had to report to Anna Reynolds who ran Industries after Mardi left. There is no personal liability for Seksaria arising out of 95 Civ. 3440.

Cyrus Amani was a consultant to Industries who at one point held Industries' checkbook. No evidence was adduced that Cyrus Amani was an officer, director, and shareholder of Industries. Therefore, he cannot be held liable as a principal of Industries.

■ The evidence shows that Sarah Amani was merely a summer intern at Industries. Sarah Amani stopped working at Industries in November 1994. Sarah Amani was never an officer, director, or shareholder of Industries. She, at a later date, formed International, but there is no evidence connecting Industries to International in any way except that Sarah Amani met Seksaria at Industries and then hired Seksaria to work for her. Therefore, Sarah Amani cannot be held personally liable for the six freight charges for which Industries is responsible. Furthermore, to the extent that Plaintiff tries to impose liability on Sarah Amani on a theory that International was the successor-in-interest to Industries, such a claim must fail because there is no evidence that International was related to Industries. The only evidence suggesting a link between International and Industries is that they had offices in the same building, and the similarity in names. The office building point is not influential, and Sarah Amani testified that she deliberately chose the name "Atcom International" in an attempt to capitalize on Industries' name.

Finally, testimony revealed that Hercules did not come into existence while Industries was doing business. Thus, there is no liability for Hercules in connection with 95 Civ. 3440.

In sum, for the six bills of lading that were contracted by Industries, the Court finds that only Industries is liable to Maersk for $24,596.43. The Court recognizes that this is a Pyhrric victory for Maersk because the evidence at trial established that Industries is no longer a functioning company.

As to the remaining two bills of lading that International is responsible for, the Court finds that § 14(4) imposes liability for the unpaid freight charges on International and its principals. The case has been stayed against International, precluding a finding of liability against International. The court must now determine who the principals of International are.

■ The Court concludes that International's only principal is Sarah Amani. The evidence revealed that Sarah Amani was the sole officer, director, and shareholder of International. She created the company, and hired International's only employee, Seksaria. Sarah Amani was responsible for the running of the company, and she paid all the bills. Based on this evidence, the Court finds that Sarah Amani was clearly a principal of International within the meaning of § 14(4) of the bills of lading. *See Alan Marketing,* 1998 WL 167323, at *2 (holding that a president of a company is a principal under § 14(4)). Therefore, Sarah Amani is liable to Maersk for $5600 in unpaid freight charges stemming from the last two bills of lading submitted in evidence in connection with 95 Civ. 3440.

*97 Civ. 2916*

The Court makes the following conclusions of law in connection with the facts adduced at trial concerning 97 Civ. 2916. Both International and Fibro contracted with Maersk in connection with the shipment of the cargo of waste paper from Norfolk, VA to Hong Kong. Therefore, under § 14(4) of the bills of lading, both International and Fibro, along with their principals, are jointly and severally liable for the $47,056 in damages suffered by Maersk.[3]

As demonstrated above, Sarah Amani is the principal of International. The Court also finds that she is the principal of Fibro. The evidence establishes that Sarah Amani formed Fibro, and that Fibro was little more than a marketing arm used by Sarah Amani to induce more orders of her products. Sarah Amani was the sole officer, director, and shareholder of Fibro. Therefore, the Court finds that Sarah Amani and Fibro are jointly and severally liable to Maersk for $47,056.

The Court finds that no other Defendant can be held liable in connection with 97 Civ. 2916. There is no evidence that Industries or Hercules had anything to do with the events that occurred in 97 Civ. 2916. The only evidence regarding Cyrus Amani was that he advised his daughter, but played no active role in the company. Similarly, the evidence establishes that Seksaria was only an employee of International.

In connection with all damages awarded by the Court in these actions, the Court exercises its discretion and declines to award attorney's fees and prejudgment interest on this amount. *See Alan Marketing,* 1998 WL 167323, at *3 ("[A]ttorney's fees and costs may be awarded where, as here, the bills of lading provides for the award of attorney fees."); *Ceres Marine Terminals, Inc. v. M/V HARMEN OLDENDORFF,* 913 F.Supp. 919, 929 (D.Md. 1995) (holding that prejudgment interest is

discretionary in cases dealing with unpaid freight charges).

## CONCLUSION

The Court finds that Defendant Sarah Amani is liable to Plaintiff, under 95 Civ. 3440, for the amount of $5600. The Court finds that Defendants Sarah Amani and Fibro Americas, Inc. are liable to Plaintiff, under 97 Civ. 2916, for the amount of $47,056. All other Defendants have no liability under either Complaint. The Court orders this case closed, and directs the Clerk of the Court to remove this case from the Court's active docket.

**SO ORDERED.**

---

**3.** The Court has already stated that International cannot be held liable by virtue if its